MARTIN v. MARTIN.

1. Findings of fact by the master, concurred in by the Circuit Judge, approved.
2. A grantee of land, with general warranty, has a right in equity to restrain his grantor and covenantor from selling this land under a prior mortgage held by him; and his assignee, who acquired the mortgage subsequent to the conveyance, has no higher rights than the assignor. This case distinguished from *Wilson* v. *Hyatt, McBurney & Co.*, 4 S. C., 369.
3. Nor could this assignee claim to be subrogated to the rights of one who held another mortgage upon this land, given by the grantor before his conveyance to plaintiff, and which had been paid out of the proceeds of sale of other land covered by the mortgage of this assignee.
4. Where a defendant in her answer claims title to the land in question, and the issues are referred to the master for determination, by consent of defendant (as must be assumed), it is too late for her afterwards to object to a trial of this issue by the court without a jury.

Before PRESSLEY, J., Abbeville, April, 1885.

The opinion fully states the case.

*Mr. Eugene B. Gary,* for appellant.

*Mr. M. P. DeBruhl,* contra.

March 24, 1886. The opinion of the court was delivered by

MR. JUSTICE McIVER. Sometime in the year 1866, Mary A. Martin executed a mortgage to J. C. Martin and W. B. Martin on a tract of land containing 1,900 acres, and on March 9, 1876, J. C. Martin and W. B. Martin executed a mortgage to James Evans on 300 acres of said tract, and on March 5, 1877, W. B. Martin executed a mortgage to T. A. Hudgens on his half of the 1,900 acre tract. On June 4, 1877, J. C. Martin and W. B. Martin conveyed to the plaintiff 315 acres of the 1,900 acre tract, and on June 28, 1880, Mary A. Martin executed a conveyance of the same 315 acres to the plaintiff. On January 23, 1883, J. C. Martin conveyed his half interest in the 1,900 acre tract to his wife, the defendant, Ina H. Martin, and on the same day assigned to her his half interest in the mortgage given by Mary

A. Martin to J. C. Martin and W. B. Martin; but exactly how the said J. C. Martin and W. B. Martin acquired title to the 1,900 acre tract, does not appear in the "Case."

On January 25, 1883, the said Ina H. Martin commenced an action against Mary A. Martin and W. B. Martin to foreclose the mortgage on said 1,900 acre tract, and to adjust matters between herself as assignee of J. C. Martin and the defendant, W. B. Martin, the co-owner of said mortgage. In that action, an order was granted for the sale of the mortgaged premises "in the following parcels or plantations, to wit: 1st. The home tract, containing twelve hundred acres, more or less, bounded, &c. 2d. The mill tract, containing four hundred acres, more or less, bounded, &c. 3d. The Stark Martin tract, containing three hundred acres, more or less, bounded," &c. The Stark Martin tract is understood to be the 315 acres conveyed to the plaintiff, as above stated. The order of sale directed that the master should "satisfy out of the share belonging to Ina H. Martin any judgments or liens upon or against the share of J. Campbell Martin prior to his assignment of his interest or share to his wife, Ina H. Martin."

The mortgaged premises having been advertised for sale, in accordance with said order, this action was commenced by the plaintiff to enjoin the sale of the 315 acre tract conveyed to her, as above stated, "until it is ascertained whether the residue of the said 1,900 acres of land is sufficient to pay all debts secured by liens on said land prior to the conveyance to this plaintiff," and "that the mortgages of James Evans and Thomas A. Hudgens be paid by the master out of the proceeds of the residue of the said 1,900 acres of land, and the title of this plaintiff be relieved from said liens." The defendants, Evans and Hudgens, consented that the prayer of the complaint be granted, but the defendant, Ina H. Martin, put in an answer setting up defences, which will be hereinafter stated. A temporary restraining order was granted in conformity to the prayer of the complaint, and the residue of the 1,900 acre tract was sold, and out of the proceeds the mortgage debts of Evans and Hudgens, who had, in the meantime, recovered judgments of foreclosure, have been fully paid and satisfied.

The defendant, Ina H. Martin, in her answer, contests generally the claim of the plaintiff, and, as a further defence, alleges that the conveyance of the 315 acres to the plaintiff by J. C. Martin and W. B. Martin was made in pursuance of an agreement that the plaintiff would pay certain notes of one J. T. Hill against them ; that the plaintiff failed to pay said notes, and in consequence thereof she "surrendered to J. C. Martin all her right, title, interest, and possession of 200 acres of said land, bounded * *, in payment, satisfaction, and discharge of J. C. Martin's claim against her for failure to perform her part of the first mentioned agreement. That for several years J. C. Martin has been in possession of 200 acres of said land from the time of said second agreement, and so remained until he sold his interest in said 1,900 acres of land to his wife, Ina H. Martin, who is now the rightful owner and possessor of said 200 acres of land."

All the issues of law and fact were referred to the master to hear and determine the same, and at the reference the plaintiff offered testimony to meet the special defence above set out in regard to the 200 acres of land, tending to show that the true nature of the agreement between J. C. Martin and the plaintiff, through Stark Martin, her husband and agent, was that the 200 acres were rented to J. C. Martin, and that the rents and profits received by him were more than sufficient to pay the notes to J. T. Hill. It was also argued before the master that the Evans mortgage having been paid out of the proceeds of the sale of the land of Mrs. Ina H. Martin, which was not covered by the lien of said mortgage, she was entitled to be subrogated to the rights of Evans against the 315 acres which, it was alleged, was covered by his mortgage. This position was not sustained by the master, because, as he says, "In the first place, this Evans debt was a debt of Mrs. Ina H. Martin's alienor before the alienation, and in the second place, there is no evidence before me that the mortgage of Evans covered only the 315 acres of land ; on the contrary, that mortgage is on 300 acres of land, and the boundaries therein described do not tally with those of the 315 acres." This is quite true, as appears from the descriptions of the two parcels, as set out in the "Case," which seem to be entirely different ; but the plaintiff alleged in her complaint that she "is informed

and believes that the said mortgage given to James Evans covers the land conveyed to her by the said J. Campbell Martin and William B. Martin," and this allegation is admitted in Mrs. Ina H. Martin's answer. So that it must be assumed that the Evans mortgage covered the 315 acres, though it may, possibly, be true also that it covers more of the 1,900 acre tract than that conveyed to plaintiff. Under the view, however, which we take of the case, this will not be material.

The master found as matter of fact: "I. That the land, to wit, the 200 acres, has been paid for by the rents and profits thereof, under the agreement of J. Campbell Martin and Stark Martin. II. That the proceeds of the sale of the residue of the land were sufficient to pay the claims mentioned in the complaint, and that they have been paid therefrom." And as conclusions of law he found: "I. That plaintiff is entitled to have the injunction made perpetual. II. That plaintiff is entitled to the possession of the land. III. That Ina H. Martin is not subrogated to the rights of James Evans in the mortgage debt."

To this report the defendant, Ina H. Martin, filed the following exceptions: "I. Because said master erred in findings of fact, as to the agreement with J. C. Martin. II. Because said master erred in his finding of fact, as to the payments made by Stark and Julia A. Martin. III. Because said master erred in his finding of fact, that the Evans debt was a debt of Ina H. Martin. IV. Because said master erred in his finding of fact, that the Evans mortgage did not cover the 315 acres of land known as the Stark Martin tract. V. Because said master erred in his finding of fact, that the land, to wit, the 200 acres, has been paid for by the rents and profits thereof, under the agreement of J. C. Martin and Stark Martin. VI. Because said master erred in his conclusion of law, that the plaintiff is entitled to have the injunction made perpetual. VII. Because said master erred in his conclusion of law, that plaintiff is entitled to the possession of the land. VIII. Because said master erred in his conclusion of law, that Ina H. Martin is not subrogated to the rights of James Evans in the mortgage debt."

The Circuit Judge overruled these exceptions, and ordered that the report be confirmed and the injunction made perpetual.

From this judgment the defendant, Ina H. Martin, appeals upon precisely the same grounds as those taken in the exceptions to the master's report, though the appellant has, in strict conformity to the rule of this court, repeated the exceptions in her grounds of appeal.

The first, second, and fifth exceptions, relating to the same subject, will be considered together. They raise questions of fact only, and having been determined adversely to the appellant by both the master and the Circuit Judge, their finding must be regarded, under the well settled rule, as conclusive, unless the appellant has been able to show that they are without any evidence to support them, or are manifestly against the weight of the evidence. There certainly is evidence to support these findings in the testimony of Stark Martin, supported by that of Martin Thomas, and the only evidence to the contrary is that derived from the declarations of the plaintiff, that she had paid J. C. Martin nothing. This was strictly true, and may be reconciled with the testimony on the part of the plaintiff, for she had not, in fact, made any payments, but still J. C. Martin may have been reimbursed by being allowed to retain the rents and profits of the 200 acres for several years. But in addition to this, she denies having said what was attributed to her, and it is not for us to weigh the testimony critically and determine which of the witnesses have given the correct version of a transaction. At all events, we certainly cannot say that the conclusion reached by the master was manifestly against the weight of the evidence, and, on the contrary, we think his conclusion may well be supported under the testimony.

The third exception is taken under a misapprehension. We are unable to discover where the master found that the Evans debt was a debt of Ina H. Martin. On the contrary, he says distinctly that "this Evans debt was a debt of Mrs. Ina H. Martin's *alienor* before the alienation"—not the debt of Mrs. Martin; and this is strictly true.

So, too, the fourth exception does not correctly represent the master. We do not see that he made any distinct finding as to the matter therein referred to. He does state in the body of his report that "there is no evidence before me that the mortgage of

Evans covered only the 315 acres." But, as we have said, we do not regard this as material, and will assume that the Evans mortgage did cover the 315 acres.

The sixth exception is somewhat general in its terms, but, as we understand it, the point intended to be raised is that the plaintiff has shown no equity to which she is entitled, calling for the remedy by injunction. It must be borne in mind that the defendant, Ina H. Martin, as assignee of J. C. Martin, can claim only such rights as her assignor could, and after it has been determined that the plaintiff has bought from J. C. Martin the land in question, and paid for the same, and has received, as she has, his warranty title, it must be manifest that a Court of Equity could not allow him to sell the same land under his mortgage; for if he did so, she would then, under his warranty, have immediate recourse upon him, and this circuity of action a Court of Equity would avoid, and, having all parties interested before it, would render such decree as would settle all the rights of the parties in the one action; and certainly J. C. Martin would not be allowed to sell land under his mortgage to pay a debt due to himself, after he had sold and conveyed the same land to a third person with warranty and received the purchase money. If this be so, then he could transfer to his assignee, Ina H. Martin, no higher or better rights than he himself had, and the plaintiff has a plain equity to restrain the defendant, Ina H. Martin, as his assignee, from selling this land to pay a debt due to plaintiff's grantor and warrantor, even though the mortgage does cover the land.

The case of *Wilson v. Hyatt, McBurney & Co.* (4 *S. C.*, 369), relied on by appellant, was very different from this. There the plaintiff sought to enjoin a judgment creditor of a third person from selling her land, upon the ground that the judgment had no lien upon the land proposed to be sold, and presented a controversy purely as to strict legal right, involving no feature of equitable cognizance. If, as the plaintiff claimed, the judgment was not a lien on the land, its sale under such judgment could do no harm, as the purchaser at such sale would get nothing, and there was, therefore, no reason why the extraordinary power of the Court of Equity should have been invoked for the protection of the plaintiff in that case, as she needed no such protection. Here,

however, the land in question was undoubtedly covered by the lien of the mortgage, and, therefore, unquestionably liable to sale under it, but for the equities growing out of the other transactions between the plaintiff in this case and the assignor of the defendant, Ina H. Martin.

In connection with this, we will consider next the eighth exception, as to the claim of the appellant to be ˙subrogated to the rights of Evans, whose mortgage, as we have assumed, does cover the land in question. Here, too, we must bear in mind that the appellant, as assignee of J. C. Martin, can only claim the rights of her assignor, and certainly he could not throw the payment of his own debt to Evans upon land which he had sold and conveyed with warranty to the plaintiff, before he had assigned the mortgage to appellant. What rights Evans may have had, it is not important to consider, as he raises no question, and in fact has consented that the prayer of the plaintiff in her complaint should be granted.

The only remaining exception is the seventh, which, it seems to us, comes too late. After the appellant has in her answer tendered the issue of title to, and right to, the possession of the land in question, and after all the issues of law and fact raised in the case have been referred to the master for determination, by the consent of the appellant, as we are obliged to assume, we think it is now too late to raise the question as to the right of the court without a jury to determine such a question, which seems to be the point made on this exception in the argument. And it is very clear from the findings of fact by the master, concurred in by the Circuit Judge, that the plaintiff has a right to the possession of the land.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.